## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Ronald D. Coleman
Joel G. MacMull
MANDELBAUM SALSBURG PC
1270 Avenue of the Americas
Suite 1808
New York, NY  10020
212-776-1834

| | |
|---|---|
| SPRAY MORET, LLC,<br><br>*Sprayground*,<br><br>- *vs.* -<br><br>HUDSON OUTERWEAR  INC., MAXIMA APPAREL CORP., MAXIMA ECOMMERCE HOLDINGS LLC, *and* MAXIMA GLOBAL HOLDINGS LLC,<br><br>*Defendants*. | CIVIL ACTION NO.<br><br><br>**COMPLAINT** |

Spray Moret, LLC ("Sprayground"), by its attorneys Mandelbaum Salsburg, P.C., as and for their Complaint against Defendants Hudson Outerwear Inc., Maxima Apparel Corp., Maxima E-Commerce Holdings LLC and Maxima Global Holdings LLC (collectively "Defendants") complains and allege as follows:

### NATURE OF THE ACTION

1.      Sprayground is a global innovator in fashion backpacks and accessories. The creation of artist and visionary David Ben David, Sprayground has successfully developed its product line into luggage and duffels, outerwear, cold weather accessories, fashion keychains and Apple® device accessories and launched the patented Wing backpack. By 2018, international

distribution of Sprayground merchandise had expanded to 30 countries and the brand is visible in the U.S., Asia, Europe, and South America.

2.     As a global brand involved in joint merchandising ventures with some of world's greatest brands in fashion, entertainment and consumer goods, Sprayground can boast rightfully of phenomenally high brand awareness, unusually dedicated fans, repeat customers, and a line of high-quality products that already include numerous collectible items.

3.     Sprayground's explosive growth result from its creative team's constant push at the envelope of creativity through original and proprietary designs, themes and trade dress that capture and retain consumers' excitement and imagination. These trademarks, trade dress and designs are protected in the form of common law trademarks, registered trademarks and copyrights (collectively the "Sprayground Designs"), as detailed below.

4.     Sprayground leverages the modern marketplace's increasingly short modern product, design and seasonal sales cycles in a manner that allows it to build on previous successes and to reinforce its recognizable stylistic themes and trade dress.  To do this, Sprayground reiterates, varies and echoes its own themes and designs to constantly delight and excite its growing fan base, recapture and maintain consumer attention, and strengthen the public's association with the Sprayground Designs and Sprayground as a brand.

5.     For these reasons, Sprayground protects and enforces the proprietary Sprayground Designs and Sprayground's diligence regarding such enforcement is of critical importance.

6.     Defendants, on the other hand, are what are known in the fashion industry as "knock-off artists."  They produce merchandise of inferior quality that sells at a premium by virtue of a parasitic business model that trades off of the goodwill and prestige of famous brands and original designers such as the Sprayground.  Defendants have been sued in this District alone three

times in the last three years for practices nearly identical to those described in this Complaint by owners and creators of fashion designs and brands that have been victimized by Defendants' infringement and misappropriation of their proprietary designs, intellectual property and brand equity.

7.     Defendants' "knockoff" business model leaves the expensive and risky processes of brand-building and design development to companies such as Sprayground, waiting until the best and most sought-after designs are established successes with consumers. Defendants then reproduce Sprayground's stylizations and proprietary designs in identical or confusingly similar fashion on cheap apparel sold via the Internet and in stores ("the Infringing Designs").

**8.**     Defendants' conduct causes consumer confusion, weakens the brand identity of the Sprayground designs and constitutes infringement of Sprayground's intellectual property rights. Accordingly, Sprayground brings this action for trademark infringement, unfair competition and false designation of origin and wrongful misappropriation arising out of Defendants' willful and bad faith conduct.

## PARTIES, JURISDICTION AND VENUE

9.     Plaintiff Spray Moret, LLC is a New York limited liability company having a primary place of business at 1411 Broadway, New York, New York and primarily doing business as "Sprayground."

10.     Sprayground is the record owner of the registered Sprayground trademarks at issue in this action and the original Sprayground works protected under and registered as copyrights, identified more specifically below.

11.     Defendant Hudson Outerwear Inc. ("Hudson") is a New York corporation organized and existing under the laws of the State of New York, with its registered office at 75

3

Cliff Street, Hastings on Hudson, New York 10706, and its principal place of business at 463 Seventh Avenue, Suite 802, New York, New York. Hudson is a corporate affiliate of defendant Maxima Apparel Corp.

12.     Defendant Maxima Apparel Corp. ("Maxima") is a New York corporation organized and existing under the laws of the State of New York, with its principal place of business at 273 Merrick Road, Lynbrook, New York and an office at 463 Seventh Avenue, Suite 601, New York, New York.

13.     Defendant Maxima E-Commerce Holdings LLC ("MECH") is a limited liability company organized and existing under the laws of the State of New York, with its registered office at 712 Stewart Avenue, Garden City, New York. MECH is a corporate affiliate of Maxima.

14.     Defendant Maxima Global Holdings LLC ("MGH") is a limited liability company organized and existing under the laws of the State of Delaware, with its registered office at 1111B South Governors Avenue, Dover, Delaware 19904, and its principal place of business at 712 Stewart Avenue, Garden City, New York. MGH is a corporate affiliate of Maxima.

15.     On information and belief, Defendants Hudson, Maxima, MECH and MGH share common management and control.

<u>**JURISDICTION AND VENUE**</u>

16.     This Court has subject matter jurisdiction over the federal claims alleged herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338. As to Sprayground's state and common law claims, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over Defendants because Defendants are either located or domiciled in this judicial district, or have otherwise purposefully availed themselves of

the privilege of doing business in this judicial district. Defendants have committed tortious acts within this judicial district, have offered for sale, sold, distributed, imported, or shipped products (including infringing apparel) through their nationally-accessible website, and otherwise, within this judicial district. Defendants solicit and transact substantial business in the State of New York, including in this judicial district. Accordingly, Defendants have otherwise made or established contacts with this judicial district sufficient to permit the exercise of personal jurisdiction by this Court over Defendants. Defendants are additionally subject to personal jurisdiction under New York Civil Practice Law and Rule § 302.

18.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, in that a substantial part of the events and injury giving rise to Sprayground's claims have occurred, and are occurring, within this judicial district, and because Defendants are subject to personal jurisdiction within this judicial district, and 28 U.S.C. § 1400 because Defendants or their agents may be found in this district.

19.     This Court has jurisdiction to enter injunctive relief pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65.

## **FACTUAL ALLEGATIONS**

### **The Sprayground Designs**

22.     Sprayground has spent significant resources and money promoting, marketing, and advertising backpacks, accessories and other merchandise bearing the Sprayground Designs.

23.     Sprayground apparel is offered for sale in numerous retail stores in every state in the United States as well as on-line retail channels, and Sprayground has had robust licensing programs and partnerships with third parties to sell Sprayground branded apparel.

28.     Sprayground advertises and promotes Sprayground apparel extensively through websites, magazines, and social media platforms such as Instagram, Twitter, and Facebook, among

other platforms, and Sprayground apparel is featured in on-line advertising on www.Sprayground.com and via the websites of its retail partners.

29.     Sprayground regularly receives media coverage in mainstream publications, including the following recent articles:

- *Women's Wear Daily*: "Sprayground's David Ben-David on How to Build a Backpack Brand" (July 31, 2018)

- *Daily Mail (UK)*: "A very different kind of capsule! Second man on the moon Buzz Aldrin, 87, debuts a funky Mars-themed FASHION collection" (December 4, 2017)

- *Forbes*: "How Sprayground's Newly Developed Smart Pack Is Changing Everyday Travel" (April 27, 2017)

- *Bloomberg – The Business of Fashion*: "How Backpacks With Attitude Hooked Beyoncé, Kevin Durant, and Your Kid" (September 9, 2016)

30.     Sprayground is also involved in a wide variety of co-branding and licensing ventures and collaborations with famous brands and media enterprises such as Viacom, Marvel, Capcom, New Balance and Cartoon Network in addition to well-known entertainers and professional athletes such as Spike Lee, Chris Brown, Ron English, Iman Shumpert, Muhammad Ali, Antonio Brown, The Game, Christina Milian, Young Thug, OBJ and Jarvis Landry.

31.     Due to the extensive use and promotion of the Sprayground Designs, Sprayground has developed substantial goodwill in the Sprayground Designs, and the Sprayground Designs are associated exclusively with the Sprayground brand.

32.     In addition to the common law trademark rights Sprayground has developed through use of the Sprayground Designs, Sprayground owns numerous trademark registrations for the Sprayground Designs in the United States and worldwide. Federal registrations of the

Sprayground Designs include United States Trademark Registration Nos. 4,781,961 and 5,536,183 for its famous "Sharkmouth" design and trademark, shown in *Figure 1* below, in International Classes 018 (leather goods) and 25 (clothing) respectively, a true copy of which registrations are attached hereto as Exhibits 1 and 2 (the "Sprayground Sharkmouth Mark").



*Figure 1*

24.     Sprayground owns the Sprayground Designs, the Sprayground Sharkmouth Mark and all the goodwill associated therewith in the United States.

25.     Defendants' use of the Infringing Designs is a deliberate effort to trade on Sprayground's fame and goodwill and to damage the valuable trademark rights embodied in the Sprayground Designs, which Sprayground and its predecessors in interest have spent years developing and protecting.

26.     Defendants' infringing apparel is likely to confuse the public.

27.     In or about late 2016, Sprayground learned that Defendants were the source of expensive knockoff apparel that incorporates the Infringing Designs on apparel.

28.     Defendants' infringement is a bold and blatant attempt to create confusion and generate profit by using the Infringing Designs to mislead consumers into believing that there is an association between their infringing apparel and authentic Sprayground apparel. After

examining the Sprayground product line, they mimicked authentic Sprayground apparel, merely substituting the confusingly similar Infringing Designs for the Sprayground Designs and created the lookalike apparel shown below:

29.     After Sprayground learned about Defendants' infringement, it gave Defendants notice of their strenuous objections and multiple opportunities to stop their unauthorized use of the Infringing Designs.

33.     Beginning in 2017, Sprayground first demanded all unauthorized use of the Sprayground Designs should cease immediately, including the sale of apparel bearing the Infringing Designs or any other trademarks or copyrighted designs owned by Sprayground.

34.     Despite such demand, Defendants have refused to cease their infringing conduct.

35.     Defendants have demonstrated and acted with utter and total disregard for Sprayground's trademark rights in the Sprayground Designs and have profited from the association created between their infringing apparel and authentic Sprayground merchandise.

36.     Defendants are using the Infringing Designs on apparel sold in the same or overlapping channels of commerce as the backpacks and accessories offered by Sprayground in an attempt to trade on Sprayground's strong consumer recognition and goodwill.

37.     There can be no doubt Defendants had knowledge of, and were very familiar with, the Sprayground Designs when they began designing, manufacturing, distributing, marketing, promoting, offering for sale, and selling the infringing apparel, and Defendants certainly had knowledge of the Sprayground Designs when Defendants continued to design, manufacture, distribute, market, promote, offer for sale, and sell infringing apparel after Sprayground voiced its objections.



*Figure 2*

38. Communications between the two sides' regarding Defendants' infringing conduct continued through counsel through 2018, until, in October of 2018, Sprayground became aware of the infringement by Defendants shown below in Figure 2, which is a frank "knockoff" of a Sprayground's original and proprietary "Sharks in Paris" design, shown as Figure 2 at left.



*Figure 3*

39.     Besides bearing the Sprayground Sharkmouth Mark, the Sharks in Paris design is trade dress that is proprietary to Sprayground, having come through use to be uniquely associated with Sprayground and having thereby acquired distinctiveness.

40.     Hudson's infringement of the Sharks in Paris design and trade dress is merely exemplary of the infringement by Hudson of the Sprayground Design.

41.     Defendants intentionally adopted and used a confusingly similar imitation of the Sprayground Designs knowing that the Infringing Designs would mislead and deceive consumers into believing that Defendants' infringing apparel was produced, authorized, or licensed by Sprayground, that the infringing apparel originated from Sprayground, or that Defendants' apparel shares the same quality or design as Sprayground's products.

42.     Sprayground has not authorized or approved Defendants' products or the Infringing Designs. Defendants are not associated, affiliated, or connected with Sprayground in any way, nor are Defendants' products licensed, authorized, sponsored, endorsed, or approved by Sprayground in any way.

43.     Sprayground had used the Sprayground Designs extensively and continuously long before Defendants began: (i) using the Infringing Designs on apparel or (ii) designing, manufacturing, distributing, marketing, promoting, offering for sale, and selling infringing apparel bearing the Infringing Designs.

44.     Defendants began selling the apparel bearing the Infringing Designs well after Sprayground had established protectable rights in the Sprayground Designs and well after the public had come to recognize the Sprayground Designs as marks identifying Sprayground's goods.

45.     The likelihood of confusion, mistake, and deception engendered by Defendants' infringement of the Sprayground Designs is causing irreparable harm to the goodwill symbolized by the Sprayground Designs and the reputation for the quality that they embody.

46.     Defendants' activities are likely to cause confusion before, during, and after the time of purchase because people viewing Defendants' infringing apparel at the point of sale, or on a wearer, are likely to mistakenly attribute it to Sprayground.

47.     By causing a likelihood of confusion, mistake, and deception, Defendants are competing unfairly with Sprayground and inflicting irreparable harm on the goodwill symbolized by the Sprayground Designs and the reputation for quality that they embody.

48.     Defendants knowingly, wantonly, willfully, intentionally, maliciously and in bad faith adopted and used a confusingly similar imitation of the Sprayground Designs.

## COUNT I.

### Infringement of Federally Registered Trademarks
### *15 U.S.C. § 1114*

49.     Sprayground repeats and re-allege the allegations of the foregoing Paragraphs of this Complaint as if fully set forth herein.

50.     Defendants' unauthorized use in commerce of the registered Sprayground Sharkmouth Marks, or colorable imitations thereof, for apparel is likely to cause confusion or mistake, or to deceive purchasers and customers as to the source, origin, or sponsorship of Defendants' products.

51.     The trade and consuming public are likely to believe that said products of Defendants are manufactured, produced, distributed, endorsed, sponsored, approved, or licensed by Sprayground, or are from the same source as apparel bearing the registered Sprayground

Sharkmouth Marks, or that there is some connection and association between the makers of Sprayground products, on the one hand, and Defendants, on the other, when such is not the case.

52.     By Defendants' unauthorized commercial use of the registered Sprayground Designs or colorable imitations thereof in connection with apparel that is either identical to or closely related to the apparel for which Sprayground owns valid federal registrations for the registered Sprayground Sharkmouth Mark,

53.     Defendants have infringed, and are infringing, the registered Sprayground Sharkmouth Mark in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

54.     Defendants' acts of trademark infringement, as alleged herein, have injured Sprayground in that Sprayground has suffered damage to their reputation and customer goodwill as a direct and proximate result of Defendants' illegal conduct. In addition, Defendants have been unjustly enriched by reason of their trademark infringement in that they have achieved sales and profits, and the opportunity to earn future sales and profits, as a direct and proximate result of their illegal conduct.

55.     Defendants' actions demonstrate a willful intent to trade on the goodwill associated with Sprayground's federally registered Sprayground Sharkmouth Marks, causing Sprayground irreparable injury.

56.     As a direct and proximate result of Defendants' unlawful conduct, as herein alleged, Sprayground has suffered, and will continue to suffer unless and until such activity is enjoined by this Court, irreparable damage and inherently unquantifiable injury and harm to their business, reputation, and customer goodwill, for which Sprayground has no adequate remedy at law.

57.     Moreover, Defendants' conduct will cause Sprayground to lose sales to which it otherwise would be entitled, unless and until such activity is enjoined by this Court.

58.     Defendants' conduct is causing, and is likely to continue to cause, substantial injury to the public and to Sprayground, and Sprayground is entitled to injunctive relief and to recover its actual damages or an award of Defendants' profits, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117.

59.     Due to Defendants' intentional, willful and deliberate activities, any such damages or profits awarded should be trebled pursuant to 15 U.S.C. § 1117(a).

## COUNT II.
### Federal Unfair Competition and False Designation of Origin
### *15 U.S.C. § 1125(a)*

60.     Sprayground repeats and re-allege the allegations of the foregoing Paragraphs of this Complaint as if fully set forth herein.

61.     Defendants' unauthorized use of colorable imitations of the Sprayground Designs and its use the Sprayground Sharks in Paris trade dress on apparel that so closely resembles Sprayground's merchandise is likely to cause confusion, to cause mistake, and to deceive the public as to the origin, source, sponsorship, approval, or affiliation of Defendants' products.

62.     Such conduct therefore constitutes a false designation of origin, a false description, and false representation of fact, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

63.     Defendants' actions demonstrate a gross, wanton, and willful intent to trade on the goodwill associated with the Sprayground Designs and Sprayground Shrkmouth Marks, causing Sprayground irreparable injury.

64.     As a direct and proximate result of Defendants' unlawful conduct, as herein alleged, Sprayground has suffered, and will continue to suffer unless and until such activity is enjoined by this Court, irreparable damage and inherently unquantifiable injury and harm to their business, reputation, and customer goodwill, for which Sprayground has no adequate remedy at law. Moreover, Defendants' conduct will cause Sprayground to lose sales to which it otherwise would be entitled, unless and until such activity is enjoined by this Court.

65.     Defendants' conduct is causing, and is likely to continue to cause, injury to the public and to Sprayground, and Sprayground is entitled to injunctive relief and to recover Sprayground's actual damages or an award of Defendants' profits, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1116 and 1117.

66.     Due to Defendants' intentional, willful and deliberate activities, any such damages or profits awarded should be trebled pursuant to 15 U.S.C. § 1117(a).

## COUNT III.
### Trademark Infringement and Unfair Competition under Common Law

67.     Sprayground repeats and re-allege the allegations of the foregoing Paragraphs of this Complaint as if fully set forth herein.

68.     Sprayground owns all rights, title to, and interest in the Sprayground Designs, including the Sharks in Paris trade dress, and all common law rights in such trade dress and trademarks including all variations of its Sharkmouth mark and design.

69.     By imitating the Sprayground Designs and marks in bad faith to sell their own products, Defendants have infringed and are infringing them  and have made, and are making, false representations that Defendants' products originate from, or are offered, sponsored, authorized, licensed by, or otherwise somehow connected with Sprayground, when such is not the case.

70.     As a result of Defendants' conduct, the public is likely to believe that Defendants' products have been manufactured or approved by Sprayground or that Defendants' products share the same quality or design as Sprayground's products.

71.     Defendants' conduct, as alleged herein, constitutes trademark infringement and unfair competition, in violation of the common law of the State of New York and other states where Defendants offer their infringing apparel.

72.     Defendants' conduct is likely to continue to cause confusion, mistake, and deception among consumers, the public, and the trade as to whether Defendants' products originate from, or are affiliated with, sponsored by, or endorsed by Sprayground.

73.     As a direct and proximate result of Defendants' unlawful conduct, as herein alleged, Sprayground has suffered, and will continue to suffer unless and until such activity is enjoined by this Court, irreparable damage and inherently unquantifiable injury and harm to their business, reputation, and customer goodwill.

74.     Moreover, Defendants' conduct will cause Sprayground to lose sales to which it otherwise would be entitled, unless and until such activity is enjoined by this Court.

75.     Defendants' willful and deliberate conduct is causing, and is likely to continue to cause, injury to the public and to Sprayground, and Sprayground is entitled to injunctive relief and to recover Sprayground's actual damages or an award of Defendants' profits, costs, and reasonable attorneys' fees.

76.     Due to Defendants' intentional and willful use of their Infringing Designs which are confusingly similar to the Sprayground Designs and marks, and the need to deter Defendants from similar conduct, Sprayground is also entitled to punitive damages.

## COUNT IV.

### Wrongful Misappropriation under Common Law

77.     Sprayground repeats and re-allege the allegations of the foregoing Paragraphs of this Complaint as if fully set forth herein.

78.     Defendants' conduct, as alleged above, constitutes a wrongful misappropriation of the labors, skills, expenditures, or good will of Sprayground or its predecessors in interest.

79.     Defendants' committed the acts alleged above in bad faith.

80.     Defendants' conduct, as alleged herein, constitutes unfair competition through wrongful misappropriation, in violation of the common law of the State of New York and other states where Defendants offer their infringing apparel.

81.     As a direct and proximate result of Defendants' unlawful conduct, as herein alleged, Sprayground has suffered, and will continue to suffer unless and until such activity is enjoined by this Court, irreparable damage and inherently unquantifiable injury and harm to their business, reputation, and customer goodwill. Moreover, Defendants' conduct will cause Sprayground to lose sales to which it otherwise would be entitled, unless and until such activity is enjoined by this Court.

82.     Defendants' willful and deliberate conduct is causing, and is likely to continue to cause, injury to the public and to Sprayground, and Sprayground is entitled to injunctive relief and to recover Sprayground's actual damages or an award of Defendants' profits, costs, and reasonable attorneys' fees.

83.     Due to Defendants' intentional and willful use of their Infringing Designs and marks which are confusingly similar to the Sprayground Designs and marks and the need to deter Defendants from similar conduct, Sprayground is also entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE,** Sprayground pray the Court as follows:

1. That an injunction be issued enjoining Defendants, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, and entities owned or controlled by Defendants, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

    i)         importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any products bearing the Infringing Designs or other colorable imitations of the Sprayground Designs and marks, and any other products bearing marks, designs or Designs that tend to deceive, mislead, or confuse the public into believing that Defendants' products in any way originate with, are sanctioned by, or are affiliated with Sprayground;

    ii)        imitating, copying, or making unauthorized use of the Sprayground Designs and marks;

    iii)       importing, exporting, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any product bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the Sprayground Designs and marks;

    iv)       using the Sprayground Designs and marks, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, in connection with the importation, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any product in such fashion as to relate or connect, or tend

to relate or connect, such product in any way to Sprayground or to any goods sold, manufactured, sponsored, approved by or connected with Sprayground;

v)        using any false designation of origin or false description, or performing any act which is likely to lead members of the trade or public to believe that any product manufactured, distributed or sold by Defendants is in any manner associated or connected with Sprayground, or is sold, manufactured, licensed, sponsored, approved or authorized by Sprayground;

vi)       engaging in any other activity constituting unfair competition with Sprayground or constituting infringement of the Sprayground Designs and marks;

vii)      taking any action, including through the use of the Sprayground Designs or marks, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, that dilutes the unique association between Sprayground and their marks, or that tarnishes the reputation or image of Sprayground;

viii)     disposing of, destroying, altering, moving, removing, concealing, tampering with, or in any manner secreting any physical evidence or documents (including computer records) of any kind, including invoices, correspondence, books of account, receipts, or other documentation relating or referring in any manner to the manufacture, advertising, receipt, acquisition, importation, purchase, sale, offer for sale, or distribution of any merchandise bearing the Sprayground Designs or marks, or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, including but not limited to the Infringing Designs; and

ix)      instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (viii) above;

2.  Directing that Defendants make available to Sprayground for review, inspection, and copying all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and back up disks) and other documents and things concerning all transactions relating to the purchase or sale of any products bearing the Sprayground Designs or marks, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, including but not limited to the Infringing Designs;

3.  Directing that Defendants deliver to Sprayground's counsel for destruction at Defendants' costs, all signs, products, packaging, promotional material, advertising material, catalogs, and any other item that bears, contains or incorporates the Sprayground Designs or marks, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, including but not limited to the Infringing Designs;

4.  Directing that Defendants recall from all distributors, retailers, or other recipients, any and all products bearing the Sprayground Designs or marks, or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, including but not limited to the Infringing Designs, and, upon recall, to deliver such goods up to Sprayground's counsel for destruction at Defendants' cost;

5.  Requiring Defendants to account for, and pay over to, Sprayground all the profits realized by Defendants from their infringement of the Sprayground Designs or marks and their unfair competition with Sprayground, trebled pursuant to 15 U.S.C. § 1117(a);

6.  Awarding Sprayground its actual damages, trebled pursuant to 15 U.S.C. § 1117(a) arising out of Defendants' acts of willful trademark infringement and unfair competition;

7.  Awarding Sprayground interest, including pre-judgment interest, on the foregoing sums;

8.  Awarding Sprayground their costs in this civil action, including reasonable attorneys' fees and expenses, pursuant to 15 U.S.C. § 1117(a);

9.  Awarding Sprayground exemplary and punitive damages to deter any future willful infringement as the Court finds appropriate;

10. Directing that Defendants file with the Court and serve upon Sprayground's counsel within thirty (30) days after entry of judgment written report under oath setting forth in detail the manner and form in which Defendants have complied with the above; and

11. Awarding Sprayground such other and further relief as the Court may deem just and proper.

MANDELBAUM SALSBURG PC

By: _____
        Ronald D. Coleman
Joel G. MacMull
1270 Avenue of the Americas – Suite 1808
New York, NY  10020
rcoleman@lawfirm.ms
jmacmull@lawfirm.ms
212-776-1834

Dated: October 26, 2018

EXHIBIT A

# United States of America
## United States Patent and Trademark Office



**Reg. No. 4,781,961**

**Registered July 28, 2015**

**Int. Cl.: 18**

**TRADEMARK**

**PRINCIPAL REGISTER**

EDCG LICENSING GROUP LLC (NEW YORK LIMITED LIABILITY COMPANY)
1385 BROADWAY
16TH FLOOR
NEW YORK, NY 10018

FOR: CARRY-ALL BAGS, BACKPACKS, DUFFEL BAGS, TOTE BAGS, SHOULDER BAGS, WALLETS AND HAND BAGS, IN CLASS 18 (U.S. CLS. 1, 2, 3, 22 AND 41).

FIRST USE 1-31-2012; IN COMMERCE 1-31-2012.

THE MARK CONSISTS OF THE IMAGE OF A SHARK'S MOUTH IN BLACK WITH WHITE TEETH AND A RED TONGUE.

THE COLOR(S) RED, WHITE AND BLACK IS/ARE CLAIMED AS A FEATURE OF THE MARK.

SER. NO. 86-480,135, FILED 12-15-2014.

KRISTIN DAHLING, EXAMINING ATTORNEY



*Michelle K. Lee*

Director of the United States
Patent and Trademark Office

EXHIBIT B

# United States of America

## United States Patent and Trademark Office



**Reg. No. 5,536,183**

**Registered Aug. 07, 2018**

**Int. Cl.: 25**

**Trademark**

**Principal Register**

SPRAY MORET, LLC  (NEW YORK LIMITED LIABILITY COMPANY)
1411 Broadway, 8th Floor
New York, NEW YORK 10018

CLASS 25: Outerwear in the nature of jackets

FIRST USE 7-31-2017; IN COMMERCE 7-31-2017

The color(s) red, white and black is/are claimed as a feature of the mark.

The mark consists of the image of a shark's mouth in black with white teeth and a red tongue.

OWNER OF U.S. REG. NO. 4781961

SER. NO. 86-876,746, FILED 01-15-2016

Director of the United States
Patent and Trademark Office